# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SERVICIOS OJEDA, C.A., | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:25-cv-01762 |
| CHEVRON CORPORATION AND CHEVRON U.S.A., INC., | § § § § | |
| Defendants. | § | |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO CHEVRON CORPORATION**

Pursuant to Federal Rule 34, Plaintiff Servicios Ojeda, C.A. ("Servicios Ojeda") requests that Defendant Chevron Corporation produce and make available for inspection and copying the documents or tangible things that are designated in these First Set of Requests for Production ("Requests") within thirty (30) days of service of this request.

## **DEFINITIONS**

1. The term "Plaintiff" or "Servicios Ojeda" shall refer to Servicios Ojeda, C.A., and its officers, managers, members, employees, staff, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf.

2. The term "Defendant" or "Chevron" shall refer to Defendant Chevron Corporation and its officers, managers, members, employees, staff, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf.

3. The term "PdVSA" shall refer to Petroleos de Venezeula, S.A. and its officers, managers, members, employees, staff, representatives, agents, attorneys, and all other persons acting or purporting to act on its behalf.

4. The term "OFAC" shall refer to the Office of Foreign Assets Control of the Department of Treasury.

5. The term "General License" shall refer to the license(s) issued by OFAC to permit certain activity to Defendant Chevron Corporation and/or Defendant Chevron U.S.A., Inc. to permit certain activity that would otherwise be blocked by Executive Orders 13850, 13857, or 13884, each as incorporated into the Venezuela Sanctions Regulations, 31 CFR part 591 (the "VSR").

6. The term "Communication" means any exchange or transmission of information, and includes, but is not limited to, any email or computer-generated message, text message, WhatsApp message, letter, correspondence, facsimile, memorandum, newsletter, telegram, advertisement, note or social media post or message (e.g., direct messages, chats, or "tweet").

7. The term "Contact Information" means the Person's (i) name; (ii) e-mail address; (ii) mailing address; and (iii) telephone number.

8. The term "Document" is interpreted with the broadest possible interpretation of the word "documents" as it is used in Federal Rule of Civil Procedure 34 and shall include, but is not limited to, records, reports, media, and Electronically Stored Information.

9. The terms "Electronically Stored Information" and "ESI" includes any type of information that is stored electronically, including all current types of computer-based information.

10. The term "Metadata" means data about the history, tracking, and/or management of an electronic file and includes information generated automatically by the operation of a computer or other information technology system when an electronic document is created, modified, transmitted, deleted, or otherwise manipulated by a user of such a system.

11. The term "Native Format" means the associated file structure defined by the original creating application.

12. The term "Person" means any natural person, individual, proprietorship, partnership, corporation, association, trust, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

13. The terms "regarding" and "relating to" mean about, as to, concerning, constituting, respecting, or evidencing.

14. The terms "You" and "Your" refer Chevron Corporation and all Persons acting or purporting to act on its behalf, including employees, independent contractors, attorneys, and agents.

15. The terms "and" and "or" are intended to have both the conjunctive and disjunctive meanings, so as to be inclusive of any Documents that otherwise may be excluded from production.

16. The use of the singular includes the plural, and the use of the plural includes the singular, so as to be inclusive of any Documents that may otherwise be excluded from production.

17. The term "each" means each and every.

18. The term "including" means including but not limited to.

## **GENERAL INSTRUCTIONS**

1. Production of items requested herein shall be produced by emailing them to the following email addresses:

> cmaccio@leoncosgrove.com;
>
> dleon@leoncosgrove.com;
>
> hchee@leoncosgrove.com;
>
> dperez@leoncosgrove.com; and
>
> alysy@leoncosgrove.com

2. Each Request for Production seeks documents and things in Your possession, custody, and control.

3. Documents or items responsive to these Requests shall be produced as they are kept in the usual course of business or must be organized and labeled to correspond to the categories in the request.

4. Production should be carried out in a manner that ensures the source from which the document has been obtained may be identified. A request for a document shall be deemed to include a request for any and all transmittal sheets, certified mail/return receipt requested cards, cover letters, exhibits, enclosures, or attachments of any kind to the document, in addition to the document itself. Documents attached to each other should not be separated.

5. Electronic records and computerized information must be produced in an intelligible format or together with a description of the system from which it was derived sufficient to permit rendering the materials intelligible.

6. These requests for production specify the production of electronic or magnetic data, more commonly referred to as Electronically Stored Information ("ESI"). Production of ESI shall

include metadata that identifies, for each document, the author and/or custodian, the sender and/or recipient(s) (whether in the "to," "cc," or "bcc" fields), the date it was created, the date it was transmitted and/or sent, a family date that identifies any attachments associated with a "parent" document, and all other relevant metadata. The load file should contain a field which designates to which request for production a document is responsive. All documents and communications should be produced in single page TIFF images. The images should be unitized by each individual logical document, endorsed with a sequential alphanumeric Bates number (e.g. ABC000001), and named to correspond to the Bates number endorsement on the first page of the document (e.g. ABC000001.txt). To the extent practicable, each individual document and communication based on an electronic file should be accompanied by a corresponding text file containing the searchable text for the document. The text file should be named to correspond to the Bates number endorsement on the first page of the document or communication (e.g. ABC000001.txt). Parent/child relationships should be maintained (i.e., documents should be produced consecutively with their attachments). Folders and file names should be provided.

7. All documents and communications that are physically attached to each other when located for production shall be left so attached. Documents and communications that are segregated or separated, whether by use of binders, tiles, subtitles, dividers, tabs, or any other method, shall be left so segregated or separated. All labels or other forms of identification contained, placed, attached, or appended on or to any binders, tiles, subtitles, dividers, or tabs shall be produced.

8. To the extent that You object to any of the requests for production on privilege grounds, You must produce a privilege log setting forth a description of the documents withheld, the privilege asserted, and the basis for such assertion.

9. These requests shall be continuing, and supplemental production should be provided as required by Federal Rule of Civil Procedure 26(e).

10. The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any Documents that otherwise may be excluded from production.

11. Any reference to a specific individual shall include any person authorized to act or acting on behalf of the specific individual. For example, a reference to Chevron Corporation shall include all persons acting or authorized to act on behalf of Chevron Corporation.

12. Unless otherwise indicated within the requests below, these requests shall cover the time period of January 1, 2016 through the present.

## REQUESTS FOR PRODUCTION

1. Produce Documents submitted by Chevron as part of its application for, and compliance with, General License 8 and its amendments, relating to Executive Order 13850 of November 1, 2018. This request includes any responses to requests for information submitted to OFAC; the identity of any Chevron joint ventures, subsidiaries, or affiliates whose operations, agreements, and transactions with Petroleos de Venezeula, S.A. (PdVSA) were covered by the General License; any documents submitted demonstrating compliance with the General License; and any written communications sent by Chevron, its officers, employees, agents, and/or representatives for the following General Licenses:

   a. General License 8, issued on January 28, 2019;

   b. General License 8A, issued on June 6, 2019;

   c. General License 8B, issued on July 26, 2019;

   d. General License 8C, issued on August 5, 2019.

  e. General License 8D, issued on October 21, 2019;

  f. General License 8E, issued on January 17, 2020;

  g. General License 8F, issued April 21, 2020;

  h. General License 8G, issued on November 17, 2020; and

  i. General License 8H, issued on June 1, 2021.

**<u>Response:</u>**


  2. Produce Documents submitted by Chevron as part of its application for, and compliance with, General License 41 and its amendments, relating to Executive Order 13850, as amended by E.O. 13857 or E.O. 13884, each as incorporated into the VSR. This request includes any responses to requests for information submitted to OFAC; the identity of any Chevron joint ventures, subsidiaries, or affiliates whose operations, agreements, and transactions with Petroleos de Venezeula, S.A. (PdVSA) were covered by the General License; any documents submitted demonstrating compliance with the General License; and any written communications sent by Chevron, its officers, employees, agents, and/or representatives for the following General Licenses:

  a. General License 41, issued on November 26, 2022;

  b. General License 41A, issued on March 4, 2025; and

  c. General License 41B, issued on March 24, 2025.

**<u>Response:</u>**

3.  Produce Documents or Communications reflecting Chevron's "maintenance, repair, or servicing of the Chevron JVs," as deemed authorized in General License 41, issued on November 26, 2022.

**Response:**

4.  Produce Documents or Communications reflecting Chevron's "sale to, exportation to, or importation into the United States of petroleum or petroleum products produced by the Chevron JVs," as deemed authorized in General License 41, issued on November 26, 2022.

**Response:**

5.  Produce Documents or Communications reflecting Chevron's work to "ensur[e] the health or safety of personnel or the integrity of operations or assets of the Chevron JVs in Venezuela," as deemed authorized in General License 41, issued on November 26, 2022.

**Response:**

6.  Produce Documents or Communications reflecting Chevron's "purchase and importation into Venezuela of goods or inputs related to" the other authorized activities listed in General License 41, issued on November 26, 2022.

**Response:**

7.  Produce Documents or Communications reflecting Chevron's "transactions ordinarily incident and necessary to the wind down of transactions previously authorized in

Venezuela General License 41 related to the operation and management by Chevron Corporation or its subsidiaries of Chevron's joint ventures in Venezuela involving Petroleos de Venezuela, S.A. or any entity in which PdVSA owns, direftly or indirectly, a 50 percent or greater interest," as deemed authorized in General License 41A, issued on March 4, 2025.

**Response:**

8. Produce Documents or Communications reflecting Chevron's "transactions ordinarily incident and necessary to the wind down of transactions previously authorized in Venezuela General License 41, issued on November 26, 2022, related to the operation and management by Chevron Corporation or its subsidiaries of Chevron's joint ventures in Venezuela involving Petroleos de Venezuela, S.A. or any entity in which PdVSA owns, directly or indirectly, a 50 percent or greater interest," as deemed authorized in General License 41B, issued on March 24, 2025.

**Response:**

9. Produce Documents or Communications relating to the August 2022 request by OFAC "for clarification and details of the deal with PdVSA," which was described in public reporting by Reuters.[1]

**Response:**

---

[1] CHEVRON APPLIES FOR VENEZUELA LICENSE RENEWAL, PROPOSES WIDER BUSINESS, REUTERS, available at https://www.reuters.com/markets/commodities/chevron-applies-venezuela-license-renewal-proposes-wider-business-2022-09-01/ (last visited May 30, 2025).

10. Produce Documents or Communications relating to the agreement(s) between Chevron and PdVSA that underlied Chevron's application for General License 41, which was described in public reporting by Reuters.[2]

**Response:**

11. Produce Documents or Communications relating to the "oil-for-debt swap with Venezuela's state-run PdVSA" that Chevron signed and disclosed to OFAC to "back up its license," which was described in public reporting by Reuters.[3] This includes Chevron's plan "to recover some $750 million in unpaid debts and dividends by year-end [2023], and all $3 billion outstanding by the end of 2025," as well as any documents and communications reflecting Chevron's recovery of "some $220 million," as of May 2023. This also includes Chevron's plans, pursuant to the oil-for-debt swap, to have "sales proceeds since January [2023]" be deposited into "the ventures' foreign bank accounts."[4]

**Response:**

12. Produce Documents or Communications relating to Chevron's plan "to drive crude production to up to 160,000 [barrels per day in 2023] and about 200,000 [barrels per day] in 2024," which was described in public reporting by Reuters.[5]

**Response:**

---

[2] *Id.* ("At least one U.S. lawmaker recently asked Chevron for a copy of its PDVSA deal …").
[3] CHEVRON AIMS TO BOOST VENEZUELA OIL OUTPUT TO ACCELERATE DEBT RECOVERY. REUTERS. *Available at* https://www.reuters.com/business/energy/chevron-aims-boost-venezuela-oil-output-accelerate-debt-recovery-sources-2023-05-10 (last visited on May 30, 2025).
[4] *Id.*
[5] *Id.*

13. Produce Documents or Communications relating to Chevron's request that PDVSA "assign it dedicated storage tanks for its joint ventures to improve handling of imported diluents and crude from the Orinoco Belt," which was described in public reporting by Reuters.[6]

**Response:**

14. Produce Documents or Communications relating to the supplement to General License 41, which allowed Chevron to make approximately $300 million in payments to Venezuela's tax authorities, which was described in public reporting by Bloomberg.[7]

**Response:**

15. Produce Documents or Communications between You and OFAC as reflected in Chevron CEO Mike Wirth's public statement to investors that, as of May 2025, Chevron "was in dialogue with the U.S. government on how its [General License 41] could be modified or extended," which was described in public reporting by Reuters.[8]

**Response:**

---

[6] *Id*.

[7] CHEVRON FILED TAXES IN VENEZUELA DESPITE SANCTIONS, DOCUMENTS SHOW. BLOOMBERG. *Available at* https://www.bloomberg.com/news/articles/2025-01-16/chevron-filed-taxes-in-venezuela-despite-sanctions-documents-show (last visited on May 30, 2025).

[8] CHEVRON, EUROPEAN FIRMS LOBBY TO KEEP STAKES IN VENEZUELA OIL JOINT VENTURES. REUTERS. *Available at* https://www.reuters.com/business/energy/chevron-european-firms-lobby-keep-stakes-venezuela-oil-joint-ventures-2025-05-15/ (last visited on May 30, 2025).

16. Produce Documents or Communications relating to Chevron's having "taken a role in procuring supplies and appointed new managers to [Chevron joint] ventures' boards," which was described in public reporting by Reuters.[9]

**Response:**

17. Produce Documents or Communications copies of all agreements signed between Chevron and PdVSA, including joint venture agreements, which may be in the possession of OFAC.

**Response:**

18. Produce Documents or Communications reflecting any extension to the time period set forth in General License 41A for Chevron to wind down its operations in Venezuela. This request includes documents and communications relating to the sixty-day (60-day) extension publicly reported by Bloomberg[10] and Reuters.[11]

**Response:**

---

[9] CHEVRON AIMS TO BOOST VENEZUELA OIL OUTPUT TO ACCELERATE DEBT RECOVERY. REUTERS. *Available at* https://www.reuters.com/business/energy/chevron-aims-boost-venezuela-oil-output-accelerate-debt-recovery-sources-2023-05-10 (last visited on May 30, 2025).

[10] VENEZUELA FREES AMERICAN AS CHEVRON WAIVER IS SET TO BE EXTENDED. BLOOMBERG. *Available at* https://www.bloomberg.com/news/articles/2025-05-20/us-set-to-extend-chevron-s-venezuela-waiver-by-another-60-days (last visited May 30, 2025); US ISSUES LIMITED LICENSE FOR CHEVRON TO REMAIN IN VENEZUELA. BLOOMBERG. *Available at* https://www.bloomberg.com/news/articles/2025-05-28/us-issues-limited-license-for-chevron-to-continue-in-venezuela (last visited May 30, 2025).

[11] AMERICAN FREED FROM VENEZUELA BACK IN US, TRUMP ENVOY SAYS. REUTERS. *Available at* https://www.reuters.com/world/americas/venezuela-minister-says-us-detainee-handed-over-trump-envoy-antigua-2025-05-20/ (last visited on May 30, 2025).

19.     Produce Documents or Communications Chevron submitted as part of an application for any general or specific licenses—either related or unrelated to General License 41A—to continue any operations in Venezuela after May 28, 2025, as publicly reported by Bloomberg.[12]

**Response:**

Dated: July 3, 2025                        Respectfully submitted,

                                                             ***/s/ Christina Ponig***
                                                             Christina Ponig Maccio
Attorney-in-Charge
Federal Bar. No. 600217
Texas Bar No. 24041706
Derek León
Federal Bar No. 21875
Texas Bar No. 24002463
Heaven Chee
Federal Bar No. 2383177
Texas Bar No. 24087290
**LEÓN COSGROVE JIMÉNEZ, LLP**
700 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: 346.250.5660
Facsimile: 305.351.4059
cmaccio@leoncosgrove.com
dleon@leoncosgrove.com
hchee@leoncosgrove.com

***Counsel for Plaintiff Servicios Ojeda, C.A.***

Diego Pérez Ara (pro hac vice)
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Coral Gables, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.351.4059

---

[12] US Issues Limited License for Chevron to Remain in Venezuela. BLOOMBERG. *Available at* https://www.bloomberg.com/news/articles/2025-05-28/us-issues-limited-license-for-chevron-to-continue-in-venezuela (last visited May 30, 2025).

## Certificate of Service

I hereby certify that, on July 3, 2025, the Requests above have been served on counsel of record for Defendants via hand delivery.  A courtesy copy has also been delivered to all counsel for Defendant Chevron Corporation via email.

<i>s/Christina Ponig</i><br>
Christina Ponig Maccio