**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SERVICIOS OJEDA, C.A. | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-1762 |
| | § | |
| CHEVRON CORPORATION AND | § | |
| CHEVRON USA, INC., | § | |
| | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**CHEVRON DEFENDANTS' MOTION TO DISMISS**

Christina Ponig
Attorney-in-Charge
Federal Bar No. 600217
Texas Bar No. 24041706
Derek León
Federal Bar No. 21875
Texas Bar No.  24002463
Heaven Chee
Federal Bar No. 2383177
Texas Bar No. 24087290
**LEÓN COSGROVE JIMÉNEZ, LLP**
700 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: 346.250.5660
Facsimile: 305.351.4059

cmaccio@leoncosgrove.com
dleon@leoncosgrove.com
hchee@leoncosgrove.com

Diego Perez (*Pro Hac Vice*)
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Coral Gables, Florida 33134

dperez@leoncosgrove.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

I.    NATURE AND STAGE OF PROCEEDING ..................................................... 1

II.   ISSUES TO BE RULED UPON AND STANDARD OF REVIEW ................................. 1

III.  SUMMARY OF ARGUMENT .......................................................................... 1

IV.   ARGUMENT & AUTHORITIES ....................................................................... 3

A.    Plaintiff Has Stated Valid Cause of Action under Texas Law for Breach of Contract against Chevron Corp Directly (Count A) .................................................. 3

1.    The Parties' Agreement Satisfies the Statute of Frauds. ................................ 3

2.    Plaintiff's Claim is Viable Under the Main Purpose Doctrine. ....................... 3

3.    Plaintiff Has Pleaded the Formation of a Contract with Chevron Corp. ........ 5

4.    Plaintiff Has Pleaded an Agency-Principal Relationship Between Chevron Corp and its Employees in Venezuela. .................................................. 7

B.    Plaintiff Has Sufficiently Pleaded a Claim for Breach of Contract against Chevron Corp Acting Through its Agent, Petropiar (Count C). ...................................... 8

C.    Plaintiff Has Pleaded a Viable Claim for Suit on Sworn Account Against Defendants (Counts D and E). .................................................................. 11

D.    Plaintiff Has Plausibly Pleaded a Claim for Quantum Meruit against Defendants (Count F). ................................................................................ 11

E.    Plaintiff Has Plausibly Pleaded a Claim for Breach of Contract under Venezuela Law against Chevron Corp, acting through its Agent and Alter Ego (Count G). ............ 13

1.    Venezuelan Law Recognizes Piercing the Corporate Veil for Abuse of Rights. .......... 13

2.    Venezuelan Law Recognizes Group Liability for Indivisible Obligations. ................. 14

3.    Venezuela Law Recognizes Agency Liability. ................................................ 15

F.    Plaintiff Has Plausibly Pleaded a Claim for Breach of Contract under Venezuela Law Directly Against Chevron Corp (Count H). ...................................................... 15

G.    Plaintiff States a Claim Under TUFTA (Count B). ...................................... 17

H.    All Claims Are Timely. .................................................................... 19

1.    The Sworn Account and Quantum Meruit Claims Are Timely. ........................... 19

2.    The TUFTA Claim is Timely Because Plaintiff Pleads Continuous Transfers of Crude Oil Within the Limitations Period. .......................................................... 20

I.    The Forum-Selection Clause in Plaintiff's Contracts with Petropiar Does Not Support Dismissal Pursuant to Forum Non Conveniens. .................................................. 21

1.   The Forum-Selection Clause Does Not Cover Plaintiff's Claims. ............................... 21

2.   Defendants Cannot Enforce the Forum-Selection Clause. ........................................... 23

3.   The Forum-Selection Clause Is Not Mandatory. ......................................................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Valdez*, 845 F.3d 580 (5th Cir. 2016) ..................................................... 7, 8

*Aperia Solutions, Inc. v. eVance, Inc.*, Case No. 21-10683, 2022 WL 2116001 (5th Cir. June 13, 2022) ............................................................................................................... 5

*Arzamendi et al. v. Hegseth et al.*, No. 24-10557, 2025 WL 2978447 (5th Cir. Oct. 22, 2025) ..... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 5

*Bushidopro, C.A. v. Nippon Pillar Corp. of Am., Inc.*, No. 4:19-CV-4249, 2021 WL 2351162 (S.D. Tex. June 9, 2021) ........................................................................................... 9

*Butler v. Hinkle*, No. MO:19-CV-00252-DC, 2021 WL 6882406 (W.D. Tex. May 20, 2021) ....... 5

*Camejo v. Ocean Drilling & Expl.*, 838 F.2d 1374 (5th Cir. 1988) ............................................. 21

*Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671 (Tex. 2017) ............................. 11

*Coleman v. Klockner & Co. AG*, 180 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ......................................................................................................................... 9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ........................................ 1

*Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721 (Tex. 2020) ................................................. 3

*Coutinho & Ferrostaal, Inc. v. STX Pan Ocean Co. Ltd.*, No. H-12-991, 2013 WL 1415107 (S.D. Tex. 2013) ................................................................................................... 25

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817 (Tex. 2012) ................................................ 4

*Darby Dental Supply, LLC v. Dentexpert Mgmt., Inc.*, No. 05-24-00373-CV, 2025 WL 1261942 (Tex. App.—Dallas Apr. 30, 2025, no pet.) ................................................................. 19

*Douglass v. Beakley*, 900 F. Supp. 2d 736 (N.D. Tex. 2012) .................................................... 10

*Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147 (Tex. App.—Houston [14th Dist.] 2017, no pet.) .............................................................................................. 5

*Franlink Inc. v. BACE Services, Inc.*, 50 F.4th 432 (5th Cir. 2022) ............................................ 23

*Haas Drilling Company v. First National Bank in Dallas*, 456 S.W.2d 886 (Tex. 1970) ......... 4, 5

*Hodge v. Engleman*, 90 F.4th 840 (5th Cir. 2024) ...................................................... 1

*In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. on other grounds Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989) ................................................................................. 21

*In re Alta Mesa Resources*, Case No. 19-35133, 2024 WL 4379801 (Bankr. S.D. Tex Oct 1, 2024) ......................................................................................................................... 18

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 491 F. Supp. 2d 690 (S.D. Tex. 2007) .... 10

*In re KP Eng'g, LP*, No. BR 19-03707, 2022 WL 3356409 (S.D. Tex. Aug. 15, 2022), *aff'd*, 63 F.4th 452 (5th Cir. 2023) ................................................................................................. 12

*Janvey v. Alguire*, 846 F. Supp. 2d 662 (N.D. Tex. 2011) ........................................................ 18

*JD Fields & Co., Inc. v. Shoring Eng'rs*, 391 F. Supp. 3d 698 (S.D. Tex. 2021) ...................... 25

*Kaiser v. De Lage Landen Fin. Servs., Inc.,* No. DR-22-CV-00038-AM/CW, 2023 WL 11960689 (W.D. Tex. Oct. 2, 2023) ......................................................................................................... 8

*Katz v. Intel Pharma, LLC*, Civil Action No. H-18-1347, 2018 WL 4701566 (S.D. Tex. Oct. 1, 2018) ...................................................................................................................................... 19

*Kitchell v. Aspen Expl., Inc.*, 562 F. Supp. 2d 843 (E.D. Tex. 2007) .......................................... 10

*Levene v. U.S.*, No. CIVA.02–0242, 2002 WL 1468018 (N.D. Tex. July 8, 2002) ....................... 8

*Matter of Vineyard Bay Dev. Co. Inc.*, 132 F.3d 269 (5th Cir. 1998) ......................................... 20

*Nat'l Loan Invs., L.P. v. Robinson*, 98 S.W.3d 781 (Tex. App.—Amarillo 2003, pet. denied) ... 19

*Nature's Formula, Inc. v. Norstar Consumer Prods. Co.,* No. CIVA. 3:03-CV-1222-, 2003 WL 23282765 (N.D. Tex. Sept. 10, 2003) ...................................................................................... 11

*Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC,* No. CIVA. H-10-1568, 2011 WL 2118762 (S.D. Tex. May 27, 2011) ......................................................................................................... 4

*Peninsula Marine, Inc. v. Principle Indus. Servs., LLC*, No. 2:23-CV-00104, 2024 WL 5036616 (S.D. Tex. Sept. 30, 2024) ........................................................................................................ 6

*Power Entm't, Inc. v. National Football League Properties, Inc.*, 151 F.3d 247 (5th Cir. 1998) .. 4

*Quintillion Subsea Operations, LLC v. Maritech Project Services, LTD.*, No. 4:20-CV-02310, 2023 WL 139663 (S.D. Tex. Jan. 6, 2023), *report and recommendation adopted*, No. 4:20-CV-02310, 2023 WL 379722 (S.D. Tex. Jan. 24, 2023) .......................................................................... 22

*R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681 (S.D. Tex. 2020) ............................... 11

*Railroad Commission of Texas v. Gulf Energy Exploration Corp.*, 482 S.W.3d 559 (Tex. 2016) .. 5

*Richard Nugent & CAO, Inc. v. Est. of Ellickson*, 543 S.W.3d 243 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ............................................................................................................... 10

*Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354 (Tex. 1971) ...................................... 7

*Robles v. Consol. Graphics, Inc.,* 965 S.W.2d 552 (Tex.App.—Houston [14th Dist.] 1997, pet. denied) (op. on reh'g) ............................................................................................................... 8

*Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721 (Tex. App.—Fort Worth 2001, no pet.) ........... 8

*Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), *abrogated by PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007) ......... 8

*Seaboard Props., Inc. v. Bunchman*, 278 F.2d 679 (5th Cir. 1960) ........................................... 8, 11

iv

*See Blanchard v. Via*, No. 5:20-CV-170-BQ, 2022 WL 1018645 (N.D. Tex. Apr. 5, 2022), *aff'd*, No. 22-10458, 2023 WL 3316326 (5th Cir. May 9, 2023) ...................................................... 12

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422 (2007)................. 21

*Sw. Bell Tel. Co. v. Fitch*, 643 F. Supp. 2d 902 (S.D. Tex. 2009)................................................. 13

*Tapjets Inc. v. Rosen*, No. H-19-227, 2019 WL 13413379 (S.D. Tex. June 26, 2019) ............... 23

*Tellez v. Madrigal*, 223 F. Supp. 3d 626 (W.D. Tex. 2016). ....................................................... 25

*Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763 (5th Cir. 2016) ............................................. 6

*W. Power, Inc. v. TransAmerican Power Prods., Inc.*, 316 F. Supp. 3d 979 (S.D. Tex. 2018) ... 20

*Weber v. PACT XPP Techs., AG*, 811 F.3d 758 (5th Cir. 2016) ........................................... 24, 25

*Willowood Condo. Ass'n, Inc. v. HNC Realty Co.*, 531 F.2d 1249 (5th Cir. 1976)........................ 7

**Statutes**

Tex. Bus. & Com. Code § 24.005(a) .......................................................................................... 18

**Other Authorities**

Article 1,133, Venezuelan Civil Code........................................................................................... 15

Article 1,160, Venezuelan Civil Code........................................................................................... 16

Article 1,185, Venezuelan Civil Code........................................................................................... 13

Articles 1,684-1,712, Venezuelan Civil Code.............................................................................. 15

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................................ 5

Fed. R. Civ. P. 8(d)....................................................................................................................... 12

Plaintiff Servicios Ojeda, C.A. ("Servicios Ojeda" or "Plaintiff") responds to the Motion to Dismiss of Defendants Chevron Corporation ("Chevron Corp") and Chevron USA, Inc. ("Chevron USA") (collectively "Defendants") as follows.

## I.      NATURE AND STAGE OF PROCEEDING

On April 16, 2025, Plaintiff filed its original complaint. Dkt. 1. Defendants moved to dismiss for failure to state a claim. On August 14, 2025, Plaintiff amended its complaint. Defendants have again moved to dismiss for failure to state a claim.

## II.      ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

Chevron seeks to dismiss all claims for failure to state a claim and/or because it contends that all claims are subject to a forum selection clause in contracts between Plaintiff and non-party Petropiar. Orders on Rule 12(b)(6) motions are reviewed *de novo*. *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024). "Rule 12(b)(6) motions are 'viewed with disfavor and rarely granted.'" *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000))."To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.      SUMMARY OF ARGUMENT

The threshold sufficiency required for a complaint to survive a motion to dismiss is exceedingly low. *Hodge*, 90 F.4th at 843; *see generally Arzamendi et al. v. Hegseth et al.*, No. 24-10557, 2025 WL 2978447, at *8 (5th Cir. Oct. 22, 2025) (Willett, J., concurring) ("Rule 12(b)(6) is a gate, not a gauntlet …" with a "deferential standard"). Plaintiff is entitled to all reasonable inferences and all allegations presumed true. *Iqbal*, 556 U.S. at 678. Nevertheless, Chevron's motion disputes myriad factual allegations—even inviting a dubious inquiry into whether its own employees had authority to act on its behalf—in its attempt to undermine Plaintiff's claims. These efforts must be rejected at this stage.

The Amended Complaint states plausible claims based on Chevron Corp's promise to pay Servicios Ojeda for invoices that could survive a newly-concocted reconciliation process, so long as Servicios Ojeda agreed to take on additional work for Chevron Corp's various Venezuelan joint

ventures. This agreement stood independently from any agreement Servicios Ojeda had directly with the Petropiar joint venture. That was the point. Petropiar proved itself an unreliable business counterparty, as it was left perpetually insolvent from Chevron Corp's control. Contractors, including Servicios Ojeda, were hesitant to agree to further services under the same terms—or any terms directly with the joint ventures—as such agreements posed a very real prospect of non-payment. Chevron Corp knew of this market resistance, and yet needed service providers to work its interests in Venezuela. That is why it made promises, directly and/or through its agents, to make Plaintiff whole in exchange for services across the country, for different joint ventures in which Chevron held stakes.

Defendants contend that there was no valid agreement formed relating to the provision of additional services and the make-whole. In doing so, Defendants suggest that any oral agreement is barred by statute of frauds and that the Amended Complaint fails to allege any facts about the Chevron Corp employees' authority or the Petropiar-Chevron agency relationship. Defendants are wrong on each. Under Texas law, the parties' various writings and oral representations constitute a writing sufficient to satisfy the statute of frauds.  That fact notwithstanding, the main purpose doctrine takes the agreement outside the statute of frauds. Under Venezuelan law, the oral agreement is binding. Moreover, Defendants' attack on the allegations constitute challenges to their veracity and raise fact issues that must not be resolved at the motion-to-dismiss stage.

Nevertheless, proceeding under the assumption that there was never another agreement between Chevron Corp and Servicios Ojeda, Defendants assert arguments based on the Petropiar-Servicios Ojeda agreements. These agreements are not the basis of Plaintiff's claims. Again, the point of the Chevron-driven reconciliation process and new agreement was for Chevron to secure competent, trade-compliant oilfield services for their Venezuelan interests without the historic specter of non-payment. As such, the forum-selection clause and any limitations issues that would arise out of Servicios Ojeda asserting the Petropiar contracts are merely strawmen. And in any event, even if enforceable by Chevron, the forum-selection clause would not capture the properly pleaded claim under the Uniform Fraudulent Transfer Act.

## IV.    ARGUMENT & AUTHORITIES

### A.    Plaintiff Has Stated Valid Cause of Action under Texas Law for Breach of Contract against Chevron Corp Directly (Count A).

Defendants' argument that the statute of frauds forecloses Plaintiff's claim for breach of contract fails because the parties' agreement was not memorialized in a single, signed writing (Dkt. 38 at 7-9) is wrong on the facts and the law.

#### 1.  The Parties' Agreement Satisfies the Statute of Frauds.

Texas law recognizes that multiple writings, such as letters and emails, that collectively contain all essential terms, can constitute the written agreement between parties. *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) ("The required written memorandum need not always be a single document, however. [A] court may determine, as a matter of law, that multiple documents comprise a written contract.") (internal quotations omitted). The First Amended Complaint repeatedly refers to emails from Chevron Corp employees using their "@chevron.com" addresses, confirming the reconciliation process and the resulting final debt amount. Dkt. 31, ¶¶ 65-78. These exchanges, and the initial promise made by procurement manager Castelli to satisfy the debt, Dkt. 31, ¶¶60-61, constitute a "written acknowledgement" of the debt and an intent to pay, satisfying the requirement for an express or implied agreement memorialized in writing.

#### 2.  Plaintiff's Claim is Viable Under the Main Purpose Doctrine.

Regardless, Chevron Corp's promise to pay is enforceable under the main purpose doctrine, an exception to the statute of frauds. Plaintiff has alleged that Chevron Corp directly entered into a new and distinct contract with Plaintiff in 2023, independent of the original Plaintiff-Petropiar service agreements. Under this new agreement, Chevron Corp guaranteed the payment of Plaintiffs' outstanding invoices and did so purely for Chevron Corp's own benefit. Under the main purpose doctrine, this new agreement between Chevron Corp and Plaintiff does not fall within the statute of frauds.

"Generally, a promise to pay another's debt must be in writing because the promisor has received no direct benefit from the transaction." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 827 (Tex. 2012). However:

> wherever the main purpose and object of the promisor is, not to answer to another, but to subserve some purpose of his own, his promise is not within the statute [of frauds], although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.

*Id.* at 827; *see also Haas Drilling Company v. First National Bank in Dallas*, 456 S.W.2d 886 (Tex. 1970); *Power Entm't, Inc. v. National Football League Properties, Inc.*, 151 F.3d 247 (5th Cir. 1998) (concluding that district court erred in dismissing breach of contract claim based on statute of frauds and reversing and remanding based on main purpose doctrine). The main purpose doctrine applies where: "(1) the promisor intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the promisor's own use and benefit—that is, the benefit it received was the promisor's main purpose for making the promise." *Cruz*, 364 S.W.3d at 828. As this Court has recognized, "[b]roadly speaking," the main purpose doctrine "removes an oral agreement to pay the debt of another from the statute of frauds 'wherever the main purpose and object of the promisor is not to answer for another, but to [ ]serve some purpose of his own....'" *Peak Tech. Servs., Inc. v. Land & Sea Eng'g, LLC,* No. CIV.A. H-10-1568, 2011 WL 2118762, at *7 (S.D. Tex. May 27, 2011) (citing *Power Entm't, Inc.,* 151 F.3d at 249).

The main purpose doctrine is directly applicable to Plaintiff's claims. Chevron Corp promised to pay Petropiar's debt to secure its own immediate, primary business benefit: obtaining critical, OFAC-compliant drilling services from Plaintiff to restart Chevron Corp's Venezuelan operations under General License 41. Dkt. 31, ¶¶ 57,61, 86. Chevron Corp was not acting out of magnanimity toward Petropiar, but out of necessity for Chevron Corp to re-start operations quickly with providers who could satisfy OFAC's compliance requirements. *Id.* at ¶57-61. The consideration from Plaintiff under this new agreement (the agreement to perform new work) was

4

not part of the original Petropiar contract, nor was any reconciliation process. Dkt. 31, ¶¶ 61, 79-83. The promise to pay was tied to this new consideration, further evidencing it as a new, primary agreement falling outside the scope of the statute of frauds. Chevron Corp was looking out for Chevron Corp alone to protect its investment in Venezuela and its ability to export Venezuelan heavy, sour crude to the United States. *See also Haas*, 456 S.W.2d 886 (finding that Haas continuing provision of jetting gas protected the bank's investment and served the bank's own interest in protecting the value of the property). Defendant's motion on Plaintiff's breach of contract claim necessarily fails.

Defendants' motion should also fail for the additional reason that, under Texas law, the question of whether an exception to the statute of frauds applies is generally a question of fact. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc*., 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also Butler v. Hinkle*, No. MO:19-CV-00252-DC, 2021 WL 6882406, at *8 (W.D. Tex. May 20, 2021) (denying 12(b)(6) motion to dismiss on statute of fraud grounds due to factual issues, which "are better left for resolution at the summary judgment stage or at trial").

### 3.  Plaintiff Has Pleaded the Formation of a Contract with Chevron Corp.

Defendants assert that Plaintiff has not sufficiently pleaded the formation of a contract and has failed to allege "with specificity" the agreement's definite terms and a meeting of the minds between Plaintiff and Chevron Corp. Dkt. 38. at 7-8. Defendants misconstrue the law.

First, questions of contract formation are inherently fact questions requiring discovery and determination by a fact finder. *Aperia Solutions, Inc. v. eVance, Inc.*, Case No. 21-10683, 2022 WL 2116001 *4 (5th Cir. June 13, 2022) ("The question of the parties' intent to be bound is usually one of fact, and we cannot say that this case presents the unusual situation in which that question may be decided as a matter of law.") (quoting *Railroad Commission of Texas v. Gulf Energy Exploration Corp.*, 482 S.W.3d 559, 572-73 (Tex. 2016).

Next, Plaintiff is not required to plead contract terms "with specificity." Rule 8(a) requires only that Plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under

Texas law, a plaintiff states a claim for breach of contract by alleging: (1) the existence of a valid contract; (2) plaintiff's performance or tendered performance; (3) defendant's breach; and (4) damages resulting from that breach. *Peninsula Marine, Inc. v. Principle Indus. Servs., LLC*, No. 2:23-CV-00104, 2024 WL 5036616, at *3 (S.D. Tex. Sept. 30, 2024) (citing *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016)). The First Amended Complaint provides ample factual detail supporting the formation of a contract between Plaintiff and Chevron Corp.

Plaintiff has alleged that Chevron Corp faced an immediate business need following the issuance of General License 41, which allowed it to resume oil extraction and exports from Venezuela. Dkt. 31, ¶¶ 55-61. To capitalize on this, Chevron Corp required reliable service providers like Plaintiff, through whom Chevron Corp could satisfy OFAC compliance requirements, to quickly restart drilling operations in the country, including for Chevron's Petropiar venture. *Id.* at ¶ 57. Plaintiff, however, was hesitant, being owed over $24 million from prior work. *Id.* at ¶ 60. This reluctance on Plaintiff's part and Chevron Corp's urgency to re-start operations in Petropiar created the essential context for the new agreement. Chevron Corp, through its procurement manager, Armando Castelli, offered the assurance that Plaintiff's old debt would be satisfied, or "guaranteed," if Plaintiff agreed to re-engage and accept new work for Chevron's Venezuelan joint ventures. Dkt. 31, ¶¶ 60-61, 65. Plaintiff accepted this new arrangement and, in reliance thereon, provided the new consideration requested by Chevron Corp: (1) agreeing to resume its business relationship with Chevron Corp's Venezuelan joint ventures, and (2) submitting to a costly and time-consuming reconciliation process that was not required by the original Petropiar contract. *Id.* at ¶¶ 61, 80-86.

The precise amount to be paid was defined by the extensive reconciliation process undertaken in early 2023. The process was in no way contemplated by the Plaintiff-Petropiar contracts. Chevron Corp demanded that Plaintiff re-submit documentation for each pending invoice. *Id.* at ¶¶ 63, 68. This process culminated in an April 17, 2023 meeting where the parties discussed the outstanding amounts, followed by an April 18, 2023 email from Chevron Corp's Susana Riera confirming the completion of the "financial reconciliation" for Plaintiff and outlining

final pending administrative actions. *Id.* at ¶¶ 76-77. Through this process, the parties arrived at definite terms as to the subject matter and amount of the debt guaranteed. *See Willowood Condo. Ass'n, Inc. v. HNC Realty Co.*, 531 F.2d 1249, 1251 (5th Cir. 1976) ("An enforceable contract must be sufficiently certain to define the nature and extent of the parties' obligations.").  Plaintiff has pleaded that Chevron Corp's involvement in the reconciliation process demonstrated its unequivocal acknowledgement of and intention to pay the past-due amount owed to Plaintiff, consistent with Castelli's prior statements. Dkt. 31, ¶¶60-86. Chevron Corp entered into a direct, primary contractual obligation with Plaintiff to satisfy the debt in exchange for Plaintiff's participation in Chevron's Venezuelan ventures after obtaining a license from OFAC. *Id.* at 79-80, 117-119. Plaintiff's allegations satisfy Rule 8(a) and *Twombly*.

### 4.  Plaintiff Has Pleaded an Agency-Principal Relationship Between Chevron Corp and its Employees in Venezuela.

Defendants also assert that Plaintiff has not adequately pleaded that Chevron Corp's employees in Venezuela acted within the scope of their authority in binding Chevron Corp to pay the debt owed to Plaintiff. Dkt. 38 at 9. This misconstrues the law and Plaintiff's allegations.

Under Texas law, it is presumed that an employee acts within the scope of employment when performing work assigned by the employer.  *See Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex. 1971) ("It is recognized in Texas that when it is proved that the truck was owned by the defendant and that the driver was in the employment of defendant, a presumption arises that the driver was acting within the scope of his employment when the accident occurred.") This principle is reflected in Texas' adoption of the RESTATEMENT (THIRD) OF AGENCY, which explains that "[a]n employee acts within the scope of employment when performing work assigned by the employer or *engaging in a course of conduct subject to the employer's control*." *Anderson v. Valdez*, 845 F.3d 580, 596 (5th Cir. 2016) (emphasis original).[1]

---

[1] Chevron's argument suggests that, on the merits, Chevron Corp will argue that its seconded Venezuelan employees acted outside the scope of their authority in engaging in the reconciliation process with Plaintiff and agreeing that Chevron Corp would pay Plaintiffs' outstanding invoices. In other words, it appears that Chevron will argue that its employees acted outside of Chevron's

Here, Plaintiff has pleaded that Chevron employees working on behalf of Chevron Corp and in the course of their duties for Chevron Corp invited Plaintiff to engage in a reconciliation process for the outstanding amount owed to Plaintiff, confirmed that all was in order and nothing further was required from Plaintiff, and told Plaintiff that, if it continued to provide services to Chevron's Petropiar venture, Chevron Corp would pay the debt. Dkt. 31, ¶¶61-86. Whether this Court applies Texas or Venezuelan law, these acts are enough to bind Chevron Corp, especially given the control that Chevron exercises over Petropiar. *Id.* at ¶¶47-51, 95-113; *Anderson*, 845 F.3d at 596; Declaration of Carlos Eduardo Acedo ("Acedo Decl.") at ¶¶17-24, 35-53, 82-159, 160-218 (filed contemporaneously herewith).

Finally, under Texas law, "[w]hether an agency relationship exists is generally a question of fact." *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied), *abrogated by PHC-Minden, L.P. v. Kimberly-Clark Corp.,* 235 S.W.3d 163 (Tex. 2007);[2] *Seaboard Props., Inc. v. Bunchman*, 278 F.2d 679, 681 (5th Cir. 1960) ("Generally speaking, the question of whether an agency relationship exists is a question of fact to be resolved by the jury"). "Although a complaint need not articulate the details of an agency relationship, it must contain sufficient facts for the Court to infer the existence of an agency relationship." *Kaiser v. De Lage Landen Fin. Servs., Inc.,* No. DR-22-CV-00038-AM/CW, 2023 WL 11960689, at *7 (W.D. Tex. Oct. 2, 2023); *Levene v. U.S.,* No. CIV.A.02–0242, 2002 WL 1468018 *2 (N.D. Tex. July 8, 2002) ("[T]he Court concurs with Plaintiff's assertion that agency status is a factual determination not appropriately determined pursuant to a Rule 12(b)(6) motion to dismiss.") Defendants' motion should be denied.

**B.** **Plaintiff Has Sufficiently Pleaded a Claim for Breach of Contract against Chevron Corp Acting Through its Agent, Petropiar (Count C).**

---

control, while Chevron's Venezuela operations remain under the scrutiny of the United States Government by way of the special license granted to Chevron by OFAC.

[2] Under Texas law, a person may be an independent contractor under some circumstances yet may still be an agent or employee performing other work or activities. *Royal Mortg. Corp. v. Montague*, 41 S.W.3d 721, 733 (Tex. App.—Fort Worth 2001, no pet.); *see also Robles v. Consol. Graphics, Inc.,* 965 S.W.2d 552, 558 (Tex.App.—Houston [14th Dist.] 1997, pet. denied) (op. on reh'g).

In the alternative, the First Amended Complaint also states a valid claim for breach of contract based on Chevron Corp acting through its agent, Petropiar, when the parties entered into the new contract in 2023.

Under Texas law, "the critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist." *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Notably, this Court has previously found that Chevron Corp and Petropiar have effectively acted as the same entity. *See Bushidopro, C.A. v. Nippon Pillar Corp. of Am., Inc.*, No. 4:19-CV-4249, 2021 WL 2351162, at *3 (S.D. Tex. June 9, 2021) (finding that Chevron was "standing in the shoes of Petropiar" in the context of a deal to acquire seals to be installed on pumps at Petropiar's facilities). Plaintiff has provided detailed factual allegations demonstrating Chevron Corp's control over the means and details of Petropiar's conduct specifically related to the contractual debt, which is a key element of establishing an agency relationship. Indeed, Plaintiff has pleaded that Chevron Corp entirely controls all operational and financial aspects of Petropiar. Dkt. 31, ¶¶95-110. Plaintiff has further pleaded that Chevron Corp controls every aspect of Petropiar due to its obligations to the United States Government to ensure compliance with OFAC sanctions. *Id.* at ¶¶47-51, 95-113.

Here, Plaintiff has alleged that the reconciliation process, which resulted in the new contract, was not initiated by Petropiar under the terms of its original agreement, but was instead instigated and managed by Chevron Corp employees, some of whom were based in the U.S. *Id.* at ¶¶60-86. This orchestration of this process shows Chevron Corp's direct control over the means and details of Petropiar's finances and operations. Chevron Corp employees controlled and control Petropiar's finance department and held ultimate sign-off authority over invoice payment decisions for years—and still does to this day. *Id.* at ¶¶ 38, 40, 50, 104-110. Chevron Corp's Carlos Miranda, Petropiar's Chief Financial Officer, and other U.S.-based Chevron Corp employees were and are central to the finance department and payment decision-making. *Id.*

All key management positions of Petropiar, including the General Manager, production technical manager, finance, procurement, and Health, Safety & Environmental ("HSE") departments, were and are held by Chevron Corp employees. *Id.* at ¶ 107. These employees used "@chevron.com" email addresses and resources. *Id.* at ¶ 39. This level of functional integration amounts to the core "control" necessary to establish an agency relationship. Indeed, Plaintiff has pleaded that Chevron Corp, for years, has had a power of attorney to control Petropiar's bank accounts. *Id.* at ¶106. Chevron Corp's employees did not act as independent contractors or as mere minority representatives. They held and hold decision-making authority over Petropiar's finances, including reconciliation and vendor payments. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 491 F. Supp. 2d 690, 706 (S.D. Tex. 2007) (agency relationship is proven where "the alleged principal had the right to control both the means and the details of the process by which the alleged agent was to accomplish the task").

A principal is liable for its agent's contractual breaches made within the scope of authority. *See Richard Nugent & CAO, Inc. v. Est. of Ellickson*, 543 S.W.3d 243, 264 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (distinguishing agency theory of liability from alter ego theory); *see also Douglass v. Beakley*, 900 F. Supp. 2d 736, 744 (N.D. Tex. 2012) ("A principal may be vicariously liable for the conduct of its agent if the agent acted with actual or apparent authority or if the principal ratified the conduct."); *Kitchell v. Aspen Expl., Inc.*, 562 F. Supp. 2d 843, 848 (E.D. Tex. 2007) ("It is axiomatic that an agent's behavior serves to bind a disclosed principal in both tort and contract."). Plaintiff alleges that Chevron Corp, through Petropiar acting as its agent, solicited and received Plaintiff's services, approved the work, confirmed the debt, and failed to pay. Plaintiff has sufficiently pleaded Chevron Corp's liability for the acts of its employees in Venezuela.[3]

---

[3] As Dr. Acedo explains, under Venezuelan law, Chevron Corp is liable for the acts of its seconded employees, and Chevron Corp and Chevron USA are liable for acts of their affiliates in Venezuela, including Petropiar. Acedo Decl. at ¶¶17-218.

Finally, as stated previously, agency determinations are intensely factual. *Seaboard*, 278 F.2d at 681 (5th Cir. 1960). And Defendants concede as much. See Mtn. at 10 ("the party alleging agency has the burden to prove it."); *see also Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) ("[I]f the existence of an agency relationship or the extent of the authority conferred is at issue*, the party making the allegation has the burden of proving it by a preponderance of the evidence*."). Dismissal for failure to state a claim is inappropriate where a plaintiff has plausibly alleged the existence of an agency relationship through concrete examples rather than conclusory statements. *See generally R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 695 (S.D. Tex. 2020) (denying motion to dismiss breach of fiduciary duty claim based on agency relationship). Plaintiff's allegations go well beyond conclusory statements.

## C.  <u>Plaintiff Has Pleaded a Viable Claim for Suit on Sworn Account Against Defendants (Counts D and E).</u>

Defendants next argue that Plaintiff cannot pursue a sworn account claim against Chevron Corp for services performed for Petropiar from 2016-2020. Mtn. at 15-16. Defendants once again mischaracterize Plaintiff's Amended Complaint and the Rules of Civil Procedure.

Plaintiff's claims expressly refer to the 2023 reconciliation process in which Chevron Corp agreed to pay the amounts due to Plaintiff in exchange for Plaintiff's continued services. *See* Dkt. 31 at ¶¶150, 155. Moreover, under Rule 8(d), Plaintiff is entitled to plead claims in the alternative. Fed. R. Civ. P. 8(d).  To plead a sworn account claim, "a plaintiff need only plead that 'there was a sale and delivery of goods/services; (2) that the amount of the account is just,...; and, (3) that the amount remains unpaid.'" *Nature's Formula, Inc. v. Norstar Consumer Prods. Co.,* No. CIV.A. 3:03-CV-1222-, 2003 WL 23282765, at *2 (N.D. Tex. Sept. 10, 2003) (citation omitted). Plaintiff has pleaded that it provided services, that Chevron Corp agreed that it would pay the account following a reconciliation process that it initiated, that the amount of the account is just, and that the amount remains unpaid. Dkt. 31, ¶¶79-86, 148-158. Defendants' motion should be denied.

## D.  <u>Plaintiff Has Plausibly Pleaded a Claim for Quantum Meruit against Defendants (Count F).</u>

Defendants' argument that the existence of express contracts between Plaintiff and Petropiar precludes Plaintiff's recovery against Chevron Corp in quantum meruit (Mtn. at 17) once again misconstrues Plaintiff's pleading and the procedural rules. On a claim for quantum meruit, Plaintiff must plead that: "(1) valuable services were rendered; (2) to the party sought to be charged; (3) which services were accepted by the party sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient." *In re KP Eng'g, LP*, No. BR 19-03707, 2022 WL 3356409, at *3 (S.D. Tex. Aug. 15, 2022), *aff'd*, 63 F.4th 452 (5th Cir. 2023) (internal quotations omitted).

Plaintiff has alleged that Chevron Corp, through its employees, oversaw and oversee the day-to-day operations and financing of Petropiar, approved Plaintiff's invoices, and was intimately aware of the services being performed. Dkt. 31, ¶¶ 38-40, 104-110. Furthermore, Chevron Corp directly orchestrated the 2023 reconciliation process and payment negotiations. Dkt. 31, ¶¶60-86. This high level of direct corporate involvement in the operation, approval, and subsequent attempts to resolve the debt satisfies the element that Chevron Corp implicitly accepted the benefits and was reasonably notified that Plaintiff expected Chevron Corp to pay the accrued debt in the context of Chevron's renewed operations. *See Blanchard v. Via*, No. 5:20-CV-170-BQ, 2022 WL 1018645, at *6 (N.D. Tex. Apr. 5, 2022), *aff'd*, No. 22-10458, 2023 WL 3316326 (5th Cir. May 9, 2023) (focusing on whether defendant "knew *or should have known*" that plaintiff expected to paid at the time the services were rendered) (emphasis added). The third and fourth elements are satisfied because Chevron Corp accepted the services and either knew or should have known, in real time, that Plaintiff was expecting payment for these services.  Moreover, the Plaintiff-Petropiar contracts do not govern Chevron Corp's imposition of a reconciliation process or the provision of additional oilfield services.

As stated above, a plaintiff may plead inconsistent or alternative theories of recovery, such as breach of contract and quantum meruit. Fed. R. Civ. P. 8(d). The claim here is explicitly pleaded "[i]n the alternative, if no contract is found to exist between Plaintiff and Chevron." Dkt. 31, ¶ 160. As Defendants dispute the existence of a valid and enforceable contract directly between

Plaintiff and Chevron Corp, the alternative, equitable claim of quantum meruit remains viable at the pleading stage. *See Sw. Bell Tel. Co. v. Fitch*, 643 F. Supp. 2d 902, 911 (S.D. Tex. 2009) (allowing a plaintiff to "seek alternative relief under both contract and quasi-contract theories" despite the fact that a plaintiff "generally cannot recover under *quantum meruit* when there is a valid contract covering the services or materials furnished").

**E.      Plaintiff Has Plausibly Pleaded a Claim for Breach of Contract under Venezuela Law against Chevron Corp, acting through its Agent and Alter Ego (Count G).**

In the alternative, the First Amended Complaint plausibly states a claim for breach of contract against Chevron Corp under Venezuelan law, based alter ego and agency liability theories.

**1.      Venezuelan Law Recognizes Piercing the Corporate Veil for Abuse of Rights.**

Defendants' expert, Mr. Muci, acknowledges that Venezuelan law permits piercing the corporate veil in cases of "fraud or an abuse of rights." Muci Decl. ¶ 13. Plaintiff has provided extensive factual allegations detailing Chevron Corp's abuse of its control over Petropiar's corporate form to its own benefit and to Plaintiff's detriment. Dkt. 31, ¶¶ 38-40, 60-86, 104-110, 111, 113, 170.

Article 1,185 of the Venezuelan Civil Code, cited in the First Amended Complaint, establishes liability for a person who "has caused harm to another, exceeding, in the exercise of its right, the limits set by good faith or by the purpose for which that right has been conferred." See Acedo Decl. at ¶ 63 (quoting Article 1,185, Venezuelan Civil Code). As Plaintiff's Venezuelan law expert explains, the allegations in the First Amended Complaint satisfy Venezuelan legal standards for piercing the corporate veil. *Id.* at ¶¶74-159.

Chevron Corp, leveraging its *de facto* control over Petropiar (including placing its executive, Martin Philipsen, as General Manager contrary to Venezuelan law, and controlling the finance department) structured Petropiar's operations to funnel nearly all valuable crude oil to Chevron Corp or its affiliates for refining in the U.S. Dkt. 31, ¶¶ 107, 104-110. This structure, orchestrated by Chevron Corp's employees, left Petropiar severely indebted and without the cash flow to pay creditors like Plaintiff, sacrificing Petropiar's corporate interests for the benefit of

Chevron Corp. *Id.* at ¶¶109-113. Chevron Corp then used the reconciliation process to induce Plaintiff to renew its services based on a promise of payment. *Id.* at ¶¶ 60-61, only to later refuse payment, hiding behind Petropiar's corporate separateness that Chevron Corp itself rendered insolvent. *Id.* at ¶¶111-113; Acedo Decl. ¶¶74-81, 119-122.

Contrary to Defendants' expert assertion that there is "no direct correlation" between Chevron's actions and the non-payment (*see* Muci Decl. ¶ 63), the Amended Complaint alleges a direct causal link: Chevron Corp's abusive financial control caused Petropiar's insolvency, which caused the non-payment, and Chevron Corp's subsequent false promise and refusal to pay perpetuated the damage to Plaintiff. Dkt. 31, ¶¶ 109, 111. Dr. Acedo confirms that this chain of events satisfies the three elements for an abuse of rights claim under Venezuelan law: (i) abusive nature of the exercise of a legal prerogative (funneling profits away); (ii) damages (non-payment); and (iii) a direct correlation (the abuse is the cause of the damages, which would not have occurred but for the abuse). Acedo Decl. ¶¶74-81.

### 2. Venezuelan Law Recognizes Group Liability for Indivisible Obligations.

Plaintiff's alter ego theory is further supported by the doctrine of group liability, or *responsabilidad grupal*, established by the Venezuelan Supreme Tribunal of Justice in the Saet Precedent. *See* Acedo Decl. ¶¶82-159. The Saet Precedent and subsequent rulings establish a general rule that where an economic group exists, the obligations of its individual members (such as Petropiar) are considered "indivisible obligations" that bind the entire group, including Chevron Corp and Chevron USA. *Id.* ¶98. This rule allows the corporate veil to be pierced merely by establishing the existence of the group and a non-compliance of an obligation by one of its members, without requiring proof of fraud or tort. *Id.* ¶¶106-10, 115-118. The purpose is preventive—to deter the abuse of corporate form—along with providing a remedy where the group member (Petropiar) has failed to comply with its debt. *Id.* ¶¶110-114.

Chevron Corp and Petropiar meet the criteria for an "economic group" because Chevron Corp controlled the management and effectively treated the corporate group as a unit for the purpose of oil extraction and U.S. refining operations. Dkt. 31, ¶¶ 104-110. Petropiar's breach of

14

its debt obligation (non-compliance) is clearly established. *Id.* at ¶87. Under the Saet Precedent, the two defendants—both members of the Chevron "economic group"—are liable for the non-compliance of another member, Petropiar. Acedo Decl. ¶¶82-159.

### 3.  Venezuela Law Recognizes Agency Liability.

Finally, Plaintiff's alternative theory of agency is viable under Venezuelan law. Defendants' expert incorrectly asserts that the Civil Code does not recognize agency. *See* Muci Dec. ¶ 73(b). Dr. Acedo clarifies that an agency agreement is known as a *mandato* agreement and is explicitly regulated in Articles 1,684 to 1,712 of the Venezuelan Civil Code. Acedo Decl. ¶¶223, 219-225. The Chevron employees who held all key management and finance roles in Petropiar were operating as agents for the benefit of Chevron Corp, which acted as the principal, making Chevron Corp directly liable for the agent's actions and ensuing liabilities, especially where those actions resulted in a civil wrong (abuse of rights) that caused damage to the Plaintiff. Acedo Decl. ¶¶35-53, 74-81. The liability can be founded on either Petropiar acting as Chevron Corp's agent, or on the Chevron employees (secondees) who controlled Petropiar acting as Chevron Corp's agents whose actions bind the principal under the Venezuelan Civil Code. *Id.* ¶¶35-225.

### F.  **Plaintiff Has Plausibly Pleaded a Claim for Breach of Contract under Venezuela Law Directly Against Chevron Corp (Count H)**.

In the alternative, Plaintiff alleges a claim for breach of contract under Venezuelan law for Chevron Corp's failure to fulfill the promises made in the 2023 agreement. Dkt. 31, ¶¶ 172-179.

Formation of a contract under Venezuela law requires only consensuality (*consensualidad*) and the principle or the autonomy of the will (*autonomía de la voluntad*). Acedo Decl. ¶¶ 160-218. As such, the 2023 agreement between Plaintiff and Chevron Corp is a valid, binding, and enforceable contract under Article 1,133 of the Venezuelan Civil Code, which merely requires the existence of (1) consent, (2) an object that may be the subject matter of an agreement, and (3) a licit cause. *Id.* ¶ 165.  These concepts are summarized below.

**Consent.** Consent can be implicit and inferred from the parties' continued behavior. *See Id.* ¶¶182-190. According to Dr. Acedo, "Chevron Corp's behavior, before, during and after the

negotiation" of the agreement is relevant. *Id.* ¶170. The 2023 agreement arose from detailed, protracted negotiations, which culminated in the reconciliation process and the Plaintiff's resumption of services. *Id.* ¶183; Dkt. 31, ¶¶ 57-88. This course of conduct—where Chevron Corp demanded a full audit of the debt (which had otherwise been ignored for years by Petropiar) and Plaintiff re-engaged in Chevron's joint venture operations—is sufficient evidence of mutual consent under Venezuelan law. As Dr. Acedo explains, "[i]t is not believable that [Plaintiff] decided to resume providing the Services, without receiving in exchange the Promise to Guarantee. Likewise, it is not credible that Chevron Corp got the Services back for Petropiar, from which the Chevron Group benefitted, and obtained the right to review the Pending Invoices, achieving a Debt Reduction, shown in the 2023 Invoices, unless Chevron Corp promised to provide the Promise to Guarantee." Acedo Decl. ¶170. Under Venezuelan law, both parties have demonstrated their consent to this agreement. *Id.* ¶¶ 160-218.

**Subject Matter and Licit Cause.** Dr. Acedo has compared these elements to the concept of consideration. *Id.* ¶166(c). The object of the contract was Chevron Corp's promise to pay Petropiar's debt in exchange for Plaintiff's promise to re-engage and complete the reconciliation. Dkt. 31, ¶¶57-88; *id.* ¶166(a). According to Dr. Acedo, the "licit clause" element is also satisfied because "there is nothing wrong with demanding payment of the Pending Invoices, making the Promise to Guarantee, resuming the provision of the Services, checking if the Pending Invoices are all right, reducing the debt, issuing the 2023 Invoices, and promising the payment or expecting the payment of the Revised Amount." *Id.* ¶166(b). Chevron Corp's promise to pay was subject to a condition precedent (a "suspensive condition")—namely, that Plaintiff resume the provision of services. *Id.* ¶167 (citing art. 1,198); *see also* Dkt. 31, ¶ 6. Once Plaintiff fulfilled this condition by resuming services, Chevron Corp's promise became effective and legally binding. *Id.* ¶166(d).

Furthermore, Article 1,160 of the Civil Code requires agreements to be performed in good faith and binds the parties not only to what is explicitly expressed but also to "all the consequences derived from those contracts, according to equity, usages or the Law." *Id.* ¶182 (quoting Article 1,160, Venezuelan Civil Code). The consequence derived from the 2023 agreement was Chevron

Corp's duty to formally issue a guarantee once the reconciliation was completed and the services resumed, a duty Chevron Corp has now breached. Dkt. 31, ¶172-179; Acedo Decl. ¶ 215-216. Regardless, Chevron Corp's promise to guarantee Petropiar's debt is a new agreement, which is enforceable under Venezuelan law. *Id.* ¶¶ 160-218, 176. It is liable for its failure to pay. *Id.* Plaintiff has stated a valid cause of action under Venezuela law that Chevron Corp breached its contract with Plaintiff.

### G.    Plaintiff States a Claim Under TUFTA (Count B).

Defendants lodge several arguments against Plaintiff's TUFTA claim: that the allegations are pleaded with insufficient specificity, that Plaintiff cannot allege an actual fraudulent transfer under Rule 9(b)'s heightened pleading standard, and that the Amended Complaint's allegations do not support a constructive fraudulent transfer. All contentions fail.

Defendants first argue that Plaintiff pleads the fraudulent transfers at issue with inadequate "specificity." Dkt. 38 at 25. In Defendants' telling, Plaintiff has failed to sufficiently allege particular transfers, transferees, and the timing of the transfers. *Id.* at 25–26. But Defendants may not seek refuge in the scale of the fraud alleged in the Amended Complaint. Here, Plaintiff thoroughly alleges Petropiar's oil extraction in the Orinoco Belt, Dkt. 31, ¶¶ 30–41, as well as how Petropiar continuously transfers all or substantially all crude oil it extracts to Defendants, *see id.* ¶ 110 ("[Defendants] export Petropiar's crude oil to the United States, where they either sell the crude oil to third parties or convert it into refined products. . . . For Chevron Corp, it is the bargain of the century: make billions from oil extracted by Venezuelan joint ventures while leaving the companies providing drilling services and equipment for those joint ventures holding the proverbial bag."). Plaintiff alleges that Petropiar transfers all or substantially all crude oil to Defendants' Gulf Coast refineries in the United States, including the Pascagoula Refinery. *Id.* ¶ 113. In disputing Plaintiff's ability to state a claim, Defendants seem to want Plaintiff to identify each individual barrel of oil exported by Petropiar. That is not the law.

Next, Defendants argue that Plaintiff's claim for an actual fraudulent transfer fails for lack of allegations with respect to "Petropiar's intent to hinder, delay, or defraud, as required under

TUFTA and Federal Rule of Civil Procedure 9(b)."  Dkt. 38 at 26.  Defendants' argument ignores both that Rule 9(b) is not applicable to the TUFTA claim that Plaintiff has actually pleaded and that the Amended Complaint alleges several badges of fraud which support a reasonable inference of fraudulent intent under TUFTA's plain text.  First, Rule 9(b)'s heightened pleading standard is inapplicable to claims of constructive fraudulent transfers, which Plaintiff alleged. See Dkt. 31 at ¶139; *see Janvey v. Alguire*, 846 F. Supp. 2d 662, 675–77 (N.D. Tex. 2011) (refusing to apply Rule 9(b) to fraudulent transfer claim); *see also In re Alta Mesa Resources*, Case No. 19-35133, 2024 WL 4379801 at *3 (Bankr. S.D. Tex Oct 1, 2024) (holding that Rule 8, not 9(b), applies to claims for constructive fraudulent transfer, given the nature of the claim) (Isgur, J.).  Second, TUFTA explicitly invites the factfinder to infer fraudulent intent where one or more of the eleven statutory "badges of fraud" are present.  *See* Tex. Bus. & Com. Code § 24.005(a). "Not all, or even a majority of the 'badges of fraud' must exist to find actual fraud. Indeed, [w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud."  *In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008) (quotation omitted).  Here, Plaintiff has alleged several statutory badges of fraud, including that the transfers are to Petropiar's insiders, *see* Dkt. 31, ¶¶ 109–10, 133; that Petropiar received notice of Plaintiff's dispute, *see id.* ¶¶ 60-61, 88, 111; that the transfers consist of all or substantially all of Petropiar's assets, *see id.* ¶ 109–10, 129; that Petropiar is insolvent, *see id.* ¶¶ 95, 97, 109, 113, 138; and that the transfers occurred while Petropiar incurred and acknowledged its debt to Plaintiff, *see id.* ¶¶ 60-61, 111, 113, 141-47.

Finally, Defendants contend that the Amended Complaint fails to state a claim for a constructive fraudulent transfer. Defendants dispute whether Plaintiff has pleaded a lack of reasonably equivalent value received, as well as Petropiar's insolvency. Dkt. 38 at 27–28. Not so.

Starting with reasonably equivalent value, Plaintiff has alleged—based on its knowledge about the details of Petropiar's crude outflows and the oil industry in Venezuela—that Petropiar did not receive reasonably equivalent value from Defendants. *See* Dkt. 31, ¶ 97 ("Petropiar receives only a pittance from the revenue generated from the oil that Petropiar produces. In addition, Chevron Corp and its affiliates are receiving Petropiar oil at only a pittance of market

pricing, if any payment is made at all."); *see also id.* ¶ 109 ("Chevron Corp does not transfer Petropiar sufficient revenue, or reasonably equivalent revenue, from the crude oil that Petropiar produces. . . . Petropiar receives only a fraction of revenue from all the crude oil that it extracts, and Chevron Corp decides how much."). That is not reasonably equivalent value. *See Nat'l Loan Invs., L.P. v. Robinson*, 98 S.W.3d 781, 784 (Tex. App.—Amarillo 2003, pet. denied) (reasonably equivalent value is determined from the creditor's perspective). Defendants cannot fault Plaintiff for not possessing detailed knowledge about how exactly Defendants have exploited Petropiar to Plaintiff's detriment.

Meanwhile, Defendants' position that Plaintiff has made only "conclusory allegations" of Petropiar's insolvency, Dkt. 38 at 27, misreads the Complaint. The Amended Complaint alleges in detail how "Chevron Corp has effectively placed Petropiar in indentured servitude, with little ability to meet its financial obligations to its services and equipment providers, while Chevron Corp makes billions in the United States from the oil extracted by the Venezuelan joint ventures." *Id.* ¶ 97; *see also id.* ¶ 95 (alleging that Petropiar "owes services providers approximately $840 to $880 million"). These allegations satisfy Rule 8 and "are not the type of vague, conclusory pleadings that *Iqbal* and *Twombly* instruct the courts to dismiss." *See., e.g., Katz v. Intel Pharma, LLC*, Civil Action No. H-18-1347, 2018 WL 4701566, *4 (S.D. Tex. Oct. 1, 2018).

## H.    <u>All Claims Are Timely.</u>

### 1.    The Sworn Account and Quantum Meruit Claims Are Timely.

Defendants' position is that the sworn account claims accrued upon the issuance of the relevant invoices, and that the quantum meruit claim accrued once Plaintiff's services were accepted. Dk. 38 at 28. Defendants are incorrect. Defendants' own authority recites that a sworn account claim accrues "on the day the dealings in which the parties were interested together ceased." *Darby Dental Supply, LLC v. Dentexpert Mgmt., Inc.*, No. 05-24-00373-CV, 2025 WL 1261942, at *4 (Tex. App.—Dallas Apr. 30, 2025, no pet.). Here, Plaintiff's sworn account claims are brought against Chevron Corp, not Petropiar. Dkt. 31, ¶ 150. And Plaintiff's sworn account claims are expressly pleaded by reference to the 2023 reconciliation process in which Defendants

guaranteed, and agreed to pay, the amounts due to Plaintiff in exchange for Plaintiff's continued services. *See id.* Accordingly, Plaintiff's claims accrued in 2023 and are timely filed. Alternatively, if the Court concludes that the claims are based on services provided to Petropiar outside the limitations period, Defendants' acknowledgement of the debt in the context of the 2023 reconciliation process revived the statute of limitations. *See Matter of Vineyard Bay Dev. Co. Inc.*, 132 F.3d 269, 271 (5th Cir. 1998). In any case, Plaintiff's dealings with Defendants continue into the present day. *See Darby Dental Supply*, 2025 WL 1261942, at *4.

Turning to quantum meruit, Defendants again disregard how Plaintiff's claim is based on services and materials provided to Defendants, and not to Petropiar. Dkt. 31, ¶ 160. A claim for quantum meruit accrues when the services are accepted. *W. Power, Inc. v. TransAmerican Power Prods., Inc.*, 316 F. Supp. 3d 979, 987 (S.D. Tex. 2018). But, according to the Amended Complaint, Defendants allegedly accepted the services at issue and acknowledged their debt in the context of the 2023 reconciliation process. *See Matter of Vineyard Bay*, 132 F.3d at 271. That renders the claim timely.

### 2. The TUFTA Claim is Timely Because Plaintiff Pleads Continuous Transfers of Crude Oil Within the Limitations Period.

Under TUFTA's statute of limitations, a claim for a fraudulent transfer must be filed "within four years after the transfer was made or the obligation was incurred." Tex. Bus. & Com. Code § 24.010 (emphasis added). Defendants argue that the Amended Complaint fails to allege a transfer or obligation within four years of this action's filing. Dkt. 38 at 29. Defendants are wrong. The Amended Complaint pleads a continuous stream of fraudulent transfers of crude oil continuing well into the limitations period. *See* Dkt. 31, ¶¶ 127–40. Aside from the reasonable inferences that can be drawn from the allegedly "continuous[]" transfers of crude oil following the "near-total freeze of 2019–2021," *id.* ¶¶ 112, 129, several of Plaintiff's allegations specifically reference post-2021 oil imports that indisputably fall within the limitations period. For example, the Amended Complaint describes how Defendants' "crude imports resumed in 2023, following the grant of OFAC License No. 41." *Id.* ¶ 23 n.10. And Plaintiff alleges that Defendants received a license to

resume their Venezuela operations in 2025, and that they "continue[] to send and profit from oil extracted" from Petropiar. *Id.* ¶ 113. Plaintiff has timely alleged fraudulent transfers.

**I.      The Forum-Selection Clause in Plaintiff's Contracts with Petropiar Does Not Support Dismissal Pursuant to Forum Non Conveniens.**

Defendants are perhaps the first U.S. corporation to want to be sued in a jurisdiction other than where they are headquartered. Defendants do not raise a traditional forum non conveniens argument rooted in applying the private-interest and public-interest factors to the plaintiff's choice of forum. *See* Dkt. 38 at 14–15 (confirming that Defendants are not arguing the "usual" factors for forum non conveniens). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007); *Camejo v. Ocean Drilling & Expl.,* 838 F.2d 1374, 1379 (5th Cir. 1988). "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1164 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. on other grounds Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). Defendants have therefore waived these arguments and failed to meet their burden to invoke the clause on any ground not raised.

Instead, Defendants rely exclusively on the purported forum-selection clause in Plaintiff's contracts with nonparty Petropiar to argue that this dispute belongs in Venezuela. But the forum-selection clause relied on by Defendants cannot do the work Defendants hope. First, the plain language of the forum-selection clause does not cover Plaintiff's claims. Second, even if it did, Defendants cannot enforce the forum-selection clause because they are nonparties to the Petropiar contracts. Third, even if the forum-selection clause applies, the plain language of the Petropiar contract demonstrates that the parties accepted the jurisdiction of the Venezuelan courts on a nonexclusive, and thus permissive, basis.

**1.      The Forum-Selection Clause Does Not Cover Plaintiff's Claims.**

Defendants contend that "[a]ll of Plaintiff's claims derive from unpaid invoices issued and services provided under five contracts between Plaintiff and Petropiar." Dkt. 38 at 29. But

Defendants rely on Texas law to construe the forum-selection clause, *see id.*, without acknowledging that the Petropiar contracts contain an unambiguous choice-of-law clause providing for the application of Venezuelan law, *see* Dkt. 38, Exs. 1–5 at § 36.2 ("This CONTRACT shall be governed and interpreted exclusively in accordance with the laws of the Bolivarian Republic of Venezuela."). Defendants ignore both Venezuela law and the language of the Petropiar contracts themselves in advancing their arguments about the contracts' scope under Texas law. *But see* Acedo Decl. ¶¶226-230. Defendants have therefore waived the proper interpretation of the Petropiar contracts.

Even if Defendants were correct about the loose causation standard they advance under Texas law, Plaintiff's claims depend on Plaintiff's new contractual relationship with Defendants— which is intentionally distinct from the earlier Petropiar-Plaintiff agreements—and the fraudulent transfers received by Defendants. Particularly here, where the Petropiar contracts contain no language respecting the scope of the forum-selection clause, it is improper to expand the reach of the clause to encompass Plaintiff's agreement with Chevron Corp directly or through its agency relationship. Plaintiff's UFTA claim is even further out of scope. In the Fifth Circuit, to determine whether a tort, such as an UFTA claim, falls within the scope of a forum-selection clause, "district courts have considered: (1) whether the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) whether resolution of the claims relates to interpretation of the contract; and (3) whether the claims involv[e] the same operative facts as a parallel claim for breach of contract." *Quintillion Subsea Operations, LLC v. Maritech Project Services, LTD.*, No. 4:20-CV-02310, 2023 WL 139663, at *12 (S.D. Tex. Jan. 6, 2023) (Bryan, M.J.), *report and recommendation adopted*, No. 4:20-CV-02310, 2023 WL 379722 (S.D. Tex. Jan. 24, 2023) (Lake, J.). These considerations show that the UFTA claim falls outside of the forum-selection clause. The illicit transfers to Defendants stand apart from any contractual agreements with Plaintiff, and Plaintiff need not prevail on its liability theories for Defendants to have been improper transferees. Accordingly, regardless of enforceability, the claims set forth in the Amended Complaint fall outside the scope of the Petropiar forum-selection clause.

## 2.    Defendants Cannot Enforce the Forum-Selection Clause.

Defendants concede that the Petropiar contracts are between Plaintiff and Petropiar. Dkt. 38 at 11. However, Defendants argue that they may enforce the Petropiar contracts "[b]ecause all of Plaintiff's claims are based on failure to pay invoices issued pursuant to contracts with Petropiar." *Id.* at 32. Defendants rely on authority that non-parties may enforce forum-selection clauses where "the signatory must rely on the terms of the written agreement in advancing its claims against the non-signatory." *Tapjets Inc. v. Rosen*, No. H-19-227, 2019 WL 13413379, at *5 n.9 (S.D. Tex. June 26, 2019). But, as discussed above, Plaintiff's claims against Defendants do not require Plaintiff to "rely on the terms of" the Petropiar contracts. Instead, Plaintiff pleads a direct contractual or quasi-contractual relationship with Defendants, as well as fraudulent transfers to Defendants. *See* Dkt. 31, ¶¶ 115–79. Plaintiff need not rely on the Petropiar contracts to hold Defendants liable, so Defendants may not enforce the forum-selection clause contained therein.

Further, Defendants ignore the Fifth Circuit's guidance for when a non-signatory may enforce a forum-selection clause. In *Franlink Inc. v. BACE Services, Inc.*, 50 F.4th 432, 441–42 (5th Cir. 2022), the court adopted the closely-related doctrine, which weighs: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." The Fifth Circuit stated that the doctrine was an equitable one, and its application must be "context specific and … determined only after weighing the significance of the facts relevant to the particular case at hand." *Id.* at 442. Defendants do not rely on this doctrine, because they cannot. It would be plainly inequitable to allow Chevron to assert its right as a non-party signatory, while simultaneously premising its motion to dismiss on the "strict" distinction between Chevron and Petropiar. Indeed, Chevron took pains to point out its minority interest in Petropiar and its distance from the benefit of Servicios Ojeda's services—the first two factors of the analysis. Its strategy must be rejected, or else Defendants would be empowered to deploy its corporate separateness and removal from Petropiar operations as a shield, while

wielding its "closely related" status as a sword. The Court should reject Defendants' motion to dismiss on these grounds.

### 3. The Forum-Selection Clause Is Not Mandatory.

Even if Defendants could enforce the forum-selection clause in Plaintiff's Petropiar contracts, and even if it applied to Plaintiff's claims, Defendants' effort would still fall short because the forum language in the Petropiar contracts is permissive and not mandatory. Under Texas law, which Defendants apply to their argument, a forum-selection clause "is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum-and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make [a forum-selection clause] mandatory." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

The relevant provision of the English-language Petropiar contracts follows:

This CONTRACT shall be governed and interpreted exclusively in accordance with the laws of the Bolivarian Republic of Venezuela, for which purpose both PARTIES choose as their sole and special domicile the city of Maturin, to the exclusion of any other, to the jurisdiction of whose courts they agree to submit.

Dkt. 38, Exs. 1–5 at § 36.2 (emphasis added). In the foregoing sentence, the parties agreed to three distinct items related to the interpretation and enforcement of the Petropiar contracts—two exclusive, and the last non-exclusive.

First, the Petropiar contracts provide for the application of Venezuelan law "exclusively." Second, "for [that] purpose," the parties selected the City of Maturin as their domicile, "to the exclusion of any other." Third, the parties "agree[d] to submit" to the jurisdiction of the courts of Maturin. Notably, unlike the choice-of-law clause ("exclusively"), and unlike the domicile clause ("to the exclusion of any other"), the forum clause contains no exclusivity language. The nonexclusive forum clause contrasts with the neighboring clauses, which are explicitly exclusive. The takeaway is that the Petropiar contracts do not mandate any forum for dispute resolution.

The forum provision here cannot be construed as mandatory without rewriting the Petropiar contracts. The Petropiar contracts are therefore distinguishable from the mandatory forum

24

provisions in the cases on which Defendants rely. *See Weber*, 811 F.3d at 769 (finding mandatory forum-selection clause where contract stated that "jurisdiction, venue, courts, and place of performance shall be at" foreign place of incorporation); *JD Fields & Co., Inc. v. Shoring Eng'rs*, 391 F. Supp. 3d 698, 704–05 (S.D. Tex. 2021) (finding mandatory forum-selection clause where contract stated that litigation "shall be brought only in State or Federal Court in Harris County in the State of Texas"); *Coutinho & Ferrostaal, Inc. v. STX Pan Ocean Co. Ltd.*, No. H-12-991, 2013 WL 1415107, at *3 (S.D. Tex. 2013) (finding mandatory forum-selection clause where contract stated that "[a]ny dispute arising under this Bill of Lading shall be decided in the country where the Carrier has his principal place of business"). Far from "eliminat[ing] the possibility of litigation in another forum," as Defendants suggest, Dkt. 38 at 30, the plain language of the Petropiar contracts reveals—at most—a permissive and nonmandatory forum-selection clause under which the parties accepted the jurisdiction of the Maturin court system without excluding any other. Accordingly, the forum-selection clause is permissive and nonmandatory, and Defendants have waived any other argument with respect to forum non conveniens. *Cf. Tellez v. Madrigal*, 223 F. Supp. 3d 626, 633 (W.D. Tex. 2016).   No forum selection clause governs Plaintiff's claims. Because Defendants have failed to satisfy their heavy burden, their motion should be denied.

## CONCLUSION

For these reasons, Plaintiff Servicios Ojeda, C.A. respectfully requests that this Court deny the motion to dismiss (Dkts. 37, 38) of Defendants Chevron Corporation and Chevron USA, Inc.

Dated: November 7, 2025

Respectfully submitted,

*s/ Christina Ponig*

Christina Ponig
Federal Bar No. 600217
Texas Bar No. 24041706
**LEÓN COSGROVE JIMÉNEZ, LLP**
700 Louisiana Street, Suite 5300
Houston, Texas 77002
Telephone: 346.250.5660
Facsimile: 305.351.4059
cmaccio@leoncosgrove.com

## CERTIFICATE OF SERVICE

I certify that, on November 7, 2025, this Response in Opposition to the Chevron Defendants' Motion to Dismiss was served on counsel for Defendants through the Court's electronic filing system.

s/Christina E. Ponig
Christina Ponig
